G. W. WILLIAMS, et al. v. S. F. CHAPMAN, et al.

*Contract—Sale of Future Products of Mill—Public Policy.*

1. A contract, whereby one party sells or pledges in advance the contingent products of a mill for a certain period and at a specified price, in consideration of money furnished and agreements entered into by the party who buys, is valid and not against public policy.

2. Where a contract of sale which provided that the vendor, for a valuable consideration, and in consideration of obligations to be performed by C., " does hereby sell and agree to deliver " to C., at Waynesville, boxed or sacked, (at option of C.,) the entire products of the vendor's mill, according to specifications, for a period of three years from date, C. to make certain advances for the purpose of paying for raw material and the cost of boxing, &c., and the contract further provided that all applications for the purchase of such products should be referred to C.; *Held*, that such contract vested the title to the finished products in the vendee.

CIVIL ACTION, tried at Fall Term, 1895, of HAYWOOD County Superior Court, before *Robinson, J.*, and a jury. The action was a creditor's bill, filed by plaintiff in behalf of himself and all the other creditors of F. T. Hyatt, against defendants for the recovery of certain property alleged to be in the hands of the defendant, J. R. Justice, Trustee, and the other defendants, for the benefit of the creditors of the said F. T. Hyatt.

The pertinent facts are stated by Associate Justice AVERY in the opinion.

*Mr. J. M. Moody*, for E. F. Hyatt (appellant).
*Mr. W. T. Crawford*, for appellee.

AVERY, J.: The appeal hinges upon the question whether F. T. Hyatt was the owner of certain locust pins

(which were the output of his mill) prior to his executing an assignment for the benefit of creditors to J. R. Justice, trustee, on the 15th of January, 1891. The defendant Chapman claimed title to these pins, some of which had been boxed, and others were unboxed, when seized at the millyard of Hyatt at Waynesville. On the 10th of March, 1890, a written contract was entered into by the defendant F. T. Hyatt and the defendant S. F. Chapman, in which we find the following stipulation : " For a valuable consideration, and in consideration of certain obligations to be performed by the second party, (Chapman,) said first party (Hyatt) *does hereby sell* and agree to deliver to said party, f. o. c., at Waynesville, N. C., all the insulator pins of size and manufacture satisfactory to second party and suitable to the requirements of the best telegraph companies, neatly and smoothly made, that said first party may manufacture for three years from to-day, at $7.50 per thousand pins; all pins are to cut, be the exact things if dry, and a little larger when green, so as to insure the equality of sizes and provide for shrinkage. All pins must *be boxed or sacked* by first party (*the second party the option of deciding which he will take*) in good sacks or suitable boxes; boxes to be nice and smooth, and shall be marked by stencils, which second party furnishes in a way second party directs. If sacks are used, they shall also be marked as above. All inquiries for purchase shall be referred to S. F. Chapman, Asheville, N. C., &c." Chapman stipulated on his part to advance on rough insulator pins delivered to Hyatt at the mill three dollars per thousand, and to advance the cost of boxing and packing. He also agreed to furnish, on reasonable terms, additional machinery if Hyatt's business should require it. When Hyatt agreed to the stipulation that he did " hereby sell " all of the pins that should be manufactured for three years,

it was manifestly the intention of the parties who signed the contract to pass the title to the whole output of the mill for that time. This language in itself is susceptible of no other construction, and .the subsequent stipulation that all inquiries for purchase should be referred to Chapman is corroborative of the view that the parties themselves understood that under a proper construction of its terms the title to the pins would vest in Chapman, as they should be furnished. The validity of a contract whereby one party sells or subjects to a lien in advance the contingent product of a mill, in consideration of money furnished and agreements entered into by the party who buys, can no longer be questioned, since the full discussion of the subject in *Brown* v. *Dail*, 117 N. C., 41. The reasons growing out of public policy, which induced the Court to adopt the rule that crops should not be subjected to lien more than one year in advance of production do not apply here, and when the reason ceases the rule must cease. To allow a farmer to create indefinite liens might result in the accumulation of heavy burdens which croppers might be unable to remove, and therefore might discourage the producer and diminish the product. But to permit a mill owner to start a business by pledging the output in advance often affords the only opportunity of carrying on the business. It enables the capitalist who uses the finished product to make himself secure in sending another into the forest to shape the raw material for his use. As will appear by reference to the authorities cited in *Brown* v. *Dail*, *supra*, sales of such contingent interest come within no inhibition founded upon motives of public policy. The sale of the pins was valid, and the title vested in Chapman as they were made, just as the logs became subject to the lien upon the happening of the contingency in *Brown* v. *Dail, supra.*

118—60

The agreement must be construed, in so far as it relates to the sale of the pins, as an executed contract whereby the title vested as soon as the pins were turned out upon the yard in a finished state. There was a distinct stipulation on the part of Hyatt to box or sack, (at the option of Chapman,) and to deliver on board the cars, which was executory, and for any breach of which Hyatt was answerable in damages.

There was no error in the instruction given to the jury and which constitutes the ground of the only exception, that in no aspect of the testimony was Hyatt the owner of the pins on January 15, 1891, and the judgment is therefore affirmed.

Affirmed.