### THE CAR FLOAT NO. 19.

(District Court, S. D. New York.   June 1, 1905.)

SALVAGE—RESCUING CAR FLOAT FROM BURNING PIER—AMOUNT OF AWARD.

Libelant's steam propeller, worth $25,000, while towing a derrick down the Hudson river, saw a pier at Hoboken on fire, and, leaving her tow, went into the adjoining slip and rescued claimant's car float, worth $22,000, which lay outside of a barge then on fire. The float was in a position of considerable danger, and the steamer was also subjected to some risk; it being necessary to play streams of water on both vessels during the performance of the service, to prevent them from taking fire. Held, that the service was one of salvage, for which libelant was entitled to an award of $1,000.

[Ed. Note.—Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty.   Suit to recover for salvage service.

Avery F. Cushman, for libellant.

James J. Macklin, for claimant.

ADAMS, District Judge.   This action was brought by the Merritt & Chapman Derrick & Wrecking Company to recover for

salvage services alleged to have been rendered to Car Float No. 19, on the 29th day of May, 1904, when the float was rescued from a dangerous fire which occurred about 5 o'clock P. M. at the piers of the Delaware, Lackawanna & Western Railroad Company at Hoboken, New Jersey.

The claim of the libellant is that its steam propeller William E. Chapman was proceeding down the Hudson River, with a derrick in tow bound for Brooklyn, and the fire being noticed, the tow was left at a wharf belonging to the Pennsylvania Railroad Company and the Chapman went, within 18 or 20 minutes, to the scene of the fire. It is alleged that pier 12 was on fire its entire length and several barges in the slip between piers 12 and 13 were also on fire; that No. 19 was lying alongside of a barge, the Allan Churchill, about two-thirds of the way up the slip and on the lower side of pier 12; that the Churchill was all on fire and No. 19 was smoking from the heat; that the Chapman, having arranged her hose lines previously, played 3 streams upon pier 12 and one upon herself to protect her from catching fire; that as soon as she arrived at No. 19, the three streams were turned upon her and the burning barge and a line made fast to No. 19, by which she was pulled out from between the piers and delivered to her owner in safety; that the propeller was in great danger of catching fire which made it necessary to continue playing the hose upon herself; that the heat was so intense that the members of her crew were obliged to protect their bodies and faces by clothing; that the float was in great danger, as the Churchill was on fire at the time and totally destroyed as well as pier 12; that there was no other tug near No. 19 at the time and the period of service was about half an hour during which time the Chapman was in great danger.

The claimant admits that there was a fire at the place and that the water front property there was destroyed as well as some vessels, but denies the rendition of any salvage service by the Chapman and alleges that No. 19 was lying at pier 13 and was towed out of danger with two other floats, by some other tug than the Chapman, and that if she rendered any assistance to No. 19, it was when she was not in a perilous position or in any danger.

The values of the vessels have been agreed upon: $25,000 for the Chapman and $22,000 for No. 19, but otherwise the whole matter seems to be in dispute, the claimant contending that if the Chapman rendered any service it was in towing the float to New York, after she had been removed from a position of peril between the slips by the Erie Company's tug Rochester, which cast the float off in the stream after towing her out and returning herself to the fire.

The libellant's contention is sustained by the positive testimony of three witnesses, the master, mate and deck hand of the tug, who are not, as usual in salvage cases, parties to the action and have no apparent pecuniary interest in the result. The claimant shows by one witness that No. 19 was not in the position at the wharf claimed by the libellant and by some others that several car floats were towed out from between the piers and left drifting in the river, but there is no direct testimony to overcome that of the libellant. If

it is untrue, it would naturally so appear by some convincing testimony and, in the absence of such, I conclude that the libellant should recover.

On the 13th of June, 1904, the libellant made a demand upon the claimant as follows:

"June 13, 1904.

Mr. John H. Starin,
    The Cortlandt Street Piers,
    New York City.
Dear Sir:—
    In regard to our claim against float No. 19, the captain of our propeller 'Chapman,' which pulled her out of the slip, states that when he made fast to her, she was then alongside of the barge 'Allan Churchill,' which was all ablaze from one end to the other. We feel that our saving this float was a meritorious service, and should be well paid for. In view of our not insisting upon security being filed for our claim, please write us that you will furnish a bond if we feel at any time that our interest requires it.
        Yours truly,        Merritt & Chapman Derrick & Wrecking Co."

To which the claimant responded as follows:

"New York, June 23rd 1904

Merritt & Chapman D & W. Co
    17 Battery Place City
Dear Sirs:
    In response to your letter of 13th instant, we beg to advise that we have fully considered your salvage claim on car float #19 and to state that we are willing to pay you five hundred ($500) dollars in full of all claims.
    This is the best we will do.
        Yours truly                Jno H. Starin
                                            A."

The claimant now urges that this should not be entertained as an admission because it "is only evidence of a person trying to adjust a matter without litigation which the courts often encourage instead of using it as a circumstance against a party seeking to refrain from the law."

It is not necessary to resort to this correspondence as evidence to establish the claim, which is otherwise proved, nevertheless, in a case of this kind, the fact that a party makes a substantial offer of settlement, rather tends to establish the view that he believed in the merits of the claim, after a full opportunity to investigate it. Doubtless it might not of itself establish a claim disputed by competent evidence, but I think it may fairly be considered here in corroboration of the testimony. It is said in Greenleaf on Evidence, § 192:

"* * * It is the condition, tacit or express, that no advantage shall be taken of the admission, it being made with a view to, and in furtherance of, an amicable adjustment, that operates to exclude it. But, if it is an independent admission of a fact, merely because it is a fact, it will be received; and even an offer of a sum, by way of compromise of a claim tacitly admitted, is receivable, unless accompanied with a caution that the offer is confidential."

With respect to the amount of the award, the No. 19 was undoubtedly in a position of some danger of being seriously injured if not consumed. The tug was also subjected to some risk from her exposure in the service. I consider that the sum of $1,000 will be a proper salvage amount and allow that sum.

Decree for libellant accordingly.