The action was brought by the trustees in the matter of E. F. (322) Young, bankrupt, to recover the interest of the bankrupt's estate in $4,500 of Norfolk city bonds, said interest amounting to $3,150, as shown by the verdict, and under claim and allegation on the part of the trustees that the said bonds were transferred to defendant bank under circumstances which made such transfer a voidable preference under the Bankruptcy Act, by reason of same having been made within four months prior to the filing of petition in bankruptcy, etc. Defendant bank, admitting that a written assignment of the bonds and actual delivery of same had been made within the four months, as alleged, claimed that such action was not a voidable preference, by reason of the fact that same was in pursuance of a valid and binding agreement entered into prior to the four months, and which gave to defendant an unimpeachable title to the property. It was shown that proceedings of involuntary bankruptcy (in re E. F. Young), followed by adjudication, were instituted on 4 June, 1904; that the written assignment was made on 9 February, 1904, delivery of bonds being made shortly thereafter, and within the four months, as stated, and the alleged agreement was entered into on 9 December, 1903, prior to four months. At that time the bonds in question had not been obtained or received by the bankrupt, but were to be turned over to him in payment of some real estate which the bankrupt had theretofore sold to Charles W. Priddy (Incorporated), of Norfolk, Va.
On the trial, issues were submitted, and responded to by the jury, and judgment had thereon, as follows:
"1. In what amount, if any, was E. F. Young indebted to defendant bank, 9 February, 1904, by reason of indorsement or otherwise? Answer: $34,000.
"2. Did E. F. Young, within the period of four months immediately preceding 4 June, 1904, transfer, by writing, to the defendant bank the $4,500 Norfolk city bonds, and if so, what was the (323) cash value of same? Answer: Yes; $4,400.
"3. Was the said E. F. Young insolvent on 9 February, 1904, and did he so continue up to and including 4 June, 1904? Answer: Yes.
"4. Did the defendant or its agents, at time of the transfer of the $4,500 Norfolk city bonds, as alleged in the complaint, have reasonable cause to believe that such transfer was intended as a preference to the defendant bank by said E. F. Young? Answer: Yes.
"5. Did the defendant E. F. Young, in December, 1903, agree verbally with the defendant to transfer to said bank the Norfolk city bonds of $4,500 if said defendant bank would loan the said E. F. Young for *Page 234 
Merchants and Farmers Bank $10,000 and the South Dunn Manufacturing Company $10,000, and did the defendant bank make said loan as agreed? Answer: Yes.
"6. Did E. F. Young, in furtherance of the agreement of December, 1903, execute the paper-writing of 9 February, 1904? Answer: Yes.
"7. Did the transfer of the $4,500 Norfolk city bonds to defendant bank enable the defendant bank to obtain a greater percentage of its debt against E. F. Young than other creditors in the same class as the bank obtained? Answer: Yes.
"8. What interest did E. F. Young have in the $4,400 received by the defendant bank from a sale of the Norfolk city bonds? Answer: $3,150, with interest from 1 March, 1904, at 6 per cent.
"It having been admitted of record that petition in bankruptcy was duly filed against said E. F. Young on 4 June, 1904, and that subsequently he was duly adjudged a bankrupt, and that the plaintiffs are the duly chosen, qualified, and now acting trustees of said Young in bankruptcy, and that the defendant is a duly chartered, organized, and existing banking institution under the laws of the United States, (324) now, upon motion of the counsel for plaintiffs, it is considered, ordered, and adjudged that the plaintiffs, in this action, R. L. Godwin, J. D., Barnes, and J. M. Hodges, trustees, do recover of the defendant in this action, the Murchison National Bank, the sum of $3,150 and interest on that sum from 1 March, 1904, and the cost of this action, to be taxed by the clerk of this court. E. B. JONES,
"Judge Presiding."
Thereupon defendant bank excepted and appealed.
After stating the case: The verdict of the jury on the fifth and sixth issues was as follows:
"5. Did the defendant E. F. Young, in December, 1903, agree verbally with the defendant bank to transfer to said bank the Norfolk city bonds of $4,500 if said defendant bank would loan the said E. F. Young for Merchants and Farmers Bank $10,000 and the South Dunn Manufacturing Company $10,000, and did the defendant bank make said loans as agreed? Answer: Yes.
"6. Did E. F. Young, in furtherance of the agreement of December, 1903, execute the paper-writing of 9 February, 1904? Answer: Yes."
And the paper-writing referred to and established by the sixth issue, and the response thereto, contains the following recital as to the agreement between the defendant bank and E. F. Young, of date December, *Page 235 
1903, and more than four months prior to the institution of the proceedings in bankruptcy: "Witnesseth, that whereas the Merchants and Farmers Bank of Dunn, N.C. is indebted to the Murchison National Bank of Wilmington, N.C. in a large sum of money which was loaned to the Merchants and Farmers Bank and the South Dunn Manufacturing Company at the request of the party of the first part; and whereas, at the time of said loans, the party of the first part (325) agreed with the said Murchison National Bank that if it would make said loans that the party of the first part had sold three brick stores in the town of Dunn, N.C. to one Charles W. Priddy (Incorporated), of Norfolk, Va., and that the deed of said stores was to be made when the abstracts of title for said stores had been approved by said Priddy (Incorporated), and the purchase money was paid, and it was agreed by the said parties hereto that if the said Murchison Bank would make said loans, the party of the first part would pay over the money derived from said sale, towit, the sum of $4,500, to the party of the second part, on account of the indebtedness then created to the said party of the second part; and whereas there has been more delay in consummating said sale than was anticipated, and the said party of the first part is desirous of carrying out said agreement: Now, therefore, in consideration of the premises, the said party of the first part doth hereby transfer and assign, sell and convey to the said party of the second part all his right, title, interest and estate in the three stores bargained to Priddy Company (Limited), and the purchase price thereof, when same is received on the consummation of the sale." There is no allegation of fraud in the transaction between these parties in December, nor that the same was had with any intent to evade the general policy or express provisions of the Bankruptcy Act. This being true, on the facts established by these two findings, the Court is of opinion that, for a present cash consideration then passing, a claim was created in favor of defendant to these bonds, the purchase price of the property referred to in the agreement, which attached as soon as they passed in consideration for the sale, good against the bankrupt himself, and enforcible in equity against the plaintiffs holding the estate as trustees under the bankruptcy proceedings, and there is nothing in the verdict on the other issues which destroys or impairs the force and effect of this position — the word "transfer," in the fourth issue, evidently (326) having the same significance as in the fifth.
It is accepted doctrine that, as a general proposition, the trustee in bankruptcy is vested with no better right or title to the property than the bankrupt had when the trustee's title accrued. And unless in contravention of some established principle of law or public policy, or some express provision of the Bankruptcy Act, a claim valid against the *Page 236 
bankrupt will be upheld against his trustee. Mfg. Co. v. Cassell,201 U.S. 334-352; Hewitt v. Berlin Machine Works, 194 U.S. 296; Smith v.Godwin, ante, 242; Loveland on Bankruptcy (2 Ed.), 368. As said in this last citation (Loveland, supra) : "The trustee takes the title of the bankrupt subject to all equities, liens, or encumbrances, whether created by operation of law or by the act of the bankrupt, which existed against the property of the bankrupt, except in cases of levies, judgments, attachments, or other judicial liens created against the property within four months preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared to be fraudulent and void." It is also established that, unless the Bankruptcy Act otherwise provides, the validity of an assignment or claim is to be determined in accordance with the principles of local law.Thompson v. Fairbanks, 196 U.S. 516; Humphrey v. Tatman, 198 U.S. 91.
And it will be observed that, under our law, no valid objection can be urged against the defendant's claim by reason of the fact that the bonds, the subject-matter of the contract, and which represented the purchase price of the property, were not in the possession or control of the bankrupt when the agreement of December was entered into. On the contrary, unless inhibited by some principle of public policy, our decisions expressly uphold and enforce such contracts, both as to tangible property and choses in action, to vested as well as contingent interests. Brown v. Dail, 117 N.C. 41; Williams v. Chapman, (327) 118 N.C. 943; Chemical Co. v. McNair, 139 N.C. 326; Nelson v. Edwards, 40 Barbour, 283.
Applying these principles, we are of the opinion that the force and effect of the verdict is to establish, for a cash consideration, towit, the loan, an equitable assignment of these bonds, the purchase price of the property in December, 1903, the date when the contract was made, to be consummated by delivery of the bonds whenever and as soon as they came into the control of E. F. Young pursuant to the sale which was then being conducted. While the language of the issue, "verbally agreed to transfer," might be construed as constituting an executory agreement, when taken in connection with the pleadings and evidence, and especially in reference to the more explicit ascertainment of the terms of the December trade, made a part of the verdict on the sixth issue, we think that a present equitable assignment was thereby created, and the words "agree to transfer" clearly referred to an agreement to "deliver" the bonds whenever the same came to hand. This meaning of the term "transfer" is recognized in the definition of the word given by the Bankruptcy Act, 30 U.S. Stat. at Large, ch. 541, sec. 1, has been applied in various decisions rendered in administration of the law (8 *Page 237 
Words and Phrases, 7066), and is so clearly the significance contemplated by the parties in the transaction, as established by the verdict, that we have no hesitation in holding, as stated, that the contract amounted to a present equitable assignment in December, more than four months prior to the institution of the bankruptcy proceedings, and the right of defendants to the bankrupt's interest in these bonds is supported by well-established principles of equity and by the great weight of authority. Walker v. Brown, 165 U.S. 655; Hauseet v. Harrison,105 U.S. 401; Union Trust Co. v. Bulkely, 150 Fed., 510; In re J.F. Grandy, 146 Fed., 318; Wilder v. Watts, 138 Fed., 436; Sabinv. Camp, 98 Fed., 974; Smith v. Godwin, supra; Brem v. (328)Covington, 104 N.C. 589; Lawson v. Pringle, 98 N.C. 450. See, also, a very full and learned note by the editor to case of Moody v.Wright, reported in 46 Am. Dec., 706-717 (the case being from 13 Met., 17). In this last reference, on page 717, it is said: "The grounds of these decisions are that the mortgage, though inoperative as a conveyance, is operative as an executory contract, which attaches to the property when acquired, and, in equity, transfers the beneficial interest to the mortgagee, the mortgagor being held as trustee for him, in accordance with the familiar maxim that equity considers that done which ought to be done: per Durfee, C. J., in Williams v. Briggs, 11 R. I., 478. Mitchell v.Winslow, 2 Story, 630, is a leading American case upon this subject. A mortgage was given in that case by two manufacturers of cutlery upon all the tools and machinery in their manufacturers and upon all the tools and machinery which they might purchase within four years, and all stock that they might manufacture during the same time. It was held to create a good, equitable lien, and was protected as such under the Bankruptcy Act. At page 644, Story, J., said: `It seems to me a clear result of all the authorities that, wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor or not, or, if personal property, whether it is then esse or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto against the latter, and all persons asserting a claim thereto under him, either voluntary or with notice, or in bankruptcy.'" And in Walker v. Brown the general doctrine is stated thus, citing with approval 3 Pomeroy Equity, 1235: "Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or (329) identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is *Page 238 
enforcible against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers, or encumbrancers with notice."
By the contract of December, 1903, when these bonds came into his possession and control, E. F. Young had no right to deal with them, except to deliver them to the defendant bank, as required by its terms. On the equitable principle which considers that done which the parties are under a binding agreement to do, said Young had no right to make any other disposition of this specific property. This is the principal test by which an equitable assignment may be distinguished from an executory agreement to assign, and a case is presented where the claimant has a right to the specific property against the bankrupt himself, and where, in the absence of some interfering State regulation or of some adverse provision of the Bankruptcy Law itself, the defendants' right is enforcible against the trustee. It is this creation of a present interest in the bonds themselves, amounting to an equitable assignment thereof, which differentiates the present case from many of those cited and relied upon by the plaintiff trustees. Some of these were cases where, from the very general terms of the agreement, no right in any specific property was acquired at all. In others, from the nature of the interest, or by reason of some interfering principle of positive law or public policy, no right in any specific property was created, except within the period when it was avoided by express provisions of the Bankruptcy Law itself. Thus, in Sheridan's case, 98 Fed., 406, there was an executory agreement to pledge property made prior to the four months, and the property was actually delivered within such period. By the very nature of a pledge, no interest passes until delivery, (330) and this was on that ground avoided as a prohibited preference.
In several other decisions an executory agreement to give a chattel mortgage made prior to the four months was not allowed to validate the mortgages executed or registered within the prohibited period. In reMfg. Co., 152 Fed., 123; Loeser v. Bank, 148 Fed., 975; In re Dismal SwampCo., 135 Fed., 415. These and other like cases, as we apprehend them, were decided either because of some State law which avoided such mortgages against creditors, except from registration, or by reason of the amendment to the Bankruptcy Act made in February, 1903. 32 Statutes at Large (Part I), ch. 487, to the effect that, "Where a preference consists in a transfer, such period of four months shall not expire until four months after the recording and registering of the transfer, if by law such recording and registering is required." And this requirement of registration distinguishes a decision of our own Court. Lance v. Tainter,137 N.C. 249. *Page 239 
Without going into a careful analysis of these decisions, which could serve no good purpose and would unduly lengthen our opinion, we deem it sufficient to say that they do not apply here. This case presents no executory agreement to make a pledge of personal property as security for a past indebtedness, nor is it an executory agreement to give a chattel mortgage or other lien which requires registration, either by State law or the Bankruptcy Act and its amendments. But, as we have endeavored to show, it is a present equitable assignment for a cash consideration of the bonds, to be delivered or "transferred" to the defendant bank whenever they come into possession of the bankrupt, and to be then appropriated to the indebtedness as far as they would pay the same.
Since the opinion was prepared, it has been earnestly contended that, inasmuch as the contract under which the defendants claim the bonds applies also in terms to realty, the case of Lance v. Tainter, supra, is direct authority against the defendants' claim. This position (331) might avail the plaintiffs if the sale of the land had not been carried out and the defendants were seeking to establish their claim against the land itself. The sale, however, was completed according to the contract with the Norfolk company, and this litigation is over the proceeds. Our registration laws concerning realty have, therefore, no application to the cause, on the principle established in the decisions ofBourne v. Sherrill, 143 N.C. 381, and the authorities therein cited.
We are of opinion, therefore, and so hold, that there was error in the judgment as rendered, and that, as a conclusion of law on the verdict as it now stands, there should be judgment entered that defendants go without day. Let this be certified and judgment entered accordingly.
Reversed.
BROWN, J., did not sit.
Cited: Garrison v. Vermont Mills, 154 N.C. 8; Carriage Co. v. Dowd,155 N.C. 316; Wooten v. Taylor, 159 N.C. 611; Corporation Commission v.Bank, 164 N.C. 207.