GRAND RAPIDS TRUST CO. *v.* RELIABLE COAL & MINING CO.

BANKRUPTCY—EQUITABLE LIEN—ASSIGNMENT OF ACCOUNTS—VOIDABLE PREFERENCE.

> An oral agreement between a debtor and a creditor that the former would pay for coal ordered either in cash or by assignment of accounts, and later, less than four months before petition in bankruptcy was filed, and at a time when the creditor knew that the debtor was insolvent, an assignment of accounts was made, an equitable assignment or equitable lien was not thereby created, but said assignment is voidable under section 60*b* of the bankruptcy act (36 U. S. Stat. p. 842) as a voidable preference, enabling one creditor to obtain a greater percentage of debt than other like creditors.

Appeal from Kent; Perkins (Willis B.), J.    Submitted January 5, 1927.   (Docket No. 27.)   Decided April 1, 1927.

¹Bankruptcy, 7 C. J. § 254; 17 L. R. A. (N. S.) 935; 3 R. C. L. 278, 279; 1 R. C. L. Supp. 802; 6 R. C. L. Supp. 167.

Bill by the Grand Rapids Trust Company, trustee in bankruptcy of Mary J. Watson, doing business as the Watson Fuel & Supply Company, against the Reliable Coal & Mining Company, the Marbold State Bank, and others to set aside certain assignments of accounts. From the decree rendered, defendant bank appeals. Affirmed.

*J. T. & T. F. McAllister,* for plaintiff.

*Corwin, Norcross & Cook,* for appellant.

CLARK, J.   This is a proceeding in equity brought by a trustee in bankruptcy of Mary J. Watson, trading as Watson Fuel & Supply Company, to recover a preference voidable under section 60*b* of the bankruptcy act (36 U. S. Stat. p. 842, U. S. Comp. Stat. § 9644).   The bankrupt was engaged in the business of buying and selling coal at Grand Rapids.   The defendant Reliable Coal & Mining Company, an Illinois corporation, was a dealer in coal at Chicago.   Perry E. Larrabee, residing in Grand Rapids, was salesman and manager of "the eastern coal department for Reliable Coal & Mining Company of Chicago."   George B. Watson, husband of Mary J. Watson, managed her coal business for her.   On June 21, 1923, the bankrupt ordered in writing from defendant through Mr. Larrabee two cars of coal and on June 23d, twenty cars, and on later days of June more cars.   The orders were accepted and confirmed in writing.   Thirty cars of coal were shipped during last days of June and during July and were received by the bankrupt in due course and sold to a number of customers.   The orders to said defendant were confirmed as upon charge account.   The writings are otherwise silent respecting method of payment.

Mr. Larrabee testified that at or within a day or two after the taking of the order for the 20 cars it was

agreed orally by and between Mr. Watson for the bankrupt and himself for said defendant that the bankrupt was to pay for the coal either in cash or by assignment of customers' accounts for the coal. Later, on August 2, 1923, Mr. Watson confirmed this by stating verbally to the secretary of said defendant that "we would make settlement of the coal in that way either in cash or the assignment." The bankrupt gave defendant a check for $207 which was paid. On July 26, 1923, a second check for $338.99 was sent. This check was protested, no funds. By August 15, 1923, the bankrupt had received the 30 cars of coal and was indebted to said defendant therefor in the sum of approximately $4,400. On or near August 13 and 15, 1923, the bankrupt assigned to said defendant a number of notes and accounts arising from sales of the coal, aggregating about $4,100. These debtors of the bankrupt and Marbold State Bank, to whom said defendant later transferred a part of the choses in action so assigned, are made parties defendant.

On August 15, 1923, a bill was filed praying appointment of a receiver for the bankrupt and one was appointed. On September 27, 1923, Mary J. Watson trading as aforesaid was adjudged bankrupt by the United States district court, western district of Michigan. The defense here is by said bank.

When the coal was sold and shipped to the bankrupt it is probable that the seller did not know and had no reasonable cause to believe that the bankrupt was insolvent. But in August, when the assignments of the notes and accounts were taken, the creditor coal company did know that the bankrupt was insolvent. Shortly before the assignments were made Mr. Larrabee was told by the bankrupt's bookkeeper that the prospect of anything being paid on the account "didn't look very good," "there wasn't much chance," and that the appointment of a receiver was

then contemplated.   Also, shortly before the assignments were made, Mr. Larrabee was told by the bankrupt's attorney:

"I told Mr. Larrabee that the matter was in the hands of the Grand Rapids Trust Company, who were going to act as receiver of the Watson Fuel & Supply Company, and that if any assignments were made at that time, it would be a pure act of bankruptcy and that the Grand Rapids Trust Company would not afford to do anything except throw them into bankruptcy.   That if any of those assignments covered any of the property that had been represented to the trust company as assets of the Watson Fuel & Supply Company, that it was an act of bankruptcy, that the company was practically bankrupt at the time."

It is unnecessary to comment further upon the matter of insolvency.   The facts as stated are established by the record.   Plaintiff had decree.   Defendant bank has appealed.

Appellant contends that, by virtue of the said oral agreement made on or about June 23, 1923, relative to assigning accounts, an equitable lien on the notes and accounts arose in favor of the defendant coal company which is valid against all, including plaintiff. In 37 C. J. pp. 315, 317, it is said:

"And where there is no contract out of which the lien could grow, nor any duty on one party to give to the other any charge or lien whatever, no basis for such a lien exists.   *   *   *

"It is also essential that the contract make a distinct appropriation of the fund or property *pro tanto,* either by giving an order thereon or by otherwise transferring it in such a manner as in effect to constitute an equitable assignment."

And we quote from syllabus of *Christmas* v. *Russell,* 14 Wall. (U. S.) 69:

"To make an equitable assignment there should be such an actual or constructive appropriation of the subject-matter as to confer a complete and present

right on the party meant to be provided for, even where the circumstances do not admit of its immediate exercise.    If the holder of the fund retain control over it, as *ex gr.*, power on his own account, to collect it or to revoke the disposition promised, this is fatal to the thing as an equitable assignment."

And from syllabus from *Wright* v. *Ellison,* 1 Wall. (U. S.) 16:

"To constitute an equitable lien on a fund there must be some distinct appropriation of the fund by the debtor.    It is not enough that the fund may have been created through the efforts and outlays of the party claiming the lien."

And from syllabus in *Re Stiger,* 202 Fed. 791:

"To constitute an equitable assignment of an account receivable as security arising out of an unexecuted agreement to assign, there must have been a purpose to presently transfer all of the assignor's right, which would create an absolute indebtedness from the account debtor to the assignee, and not merely the creation of an obligation on the part of the assignor to make payment from the proceeds of the account."

See *Speckman* v. *Smedley Bros.,* 153 Fed. 771; *Godwin* v. *National Bank,* 145 N. C. 320 (59 S. E. 154, 17 L. R. A. [N. S.] 935, and note).

Measured by the rules of law, there was no equitable assignment and no equitable lien.    The bankrupt had power under the agreement to collect the accounts and to avoid assignment and to defeat an effort to compel assignment.    This as above stated destroys the theory of equitable assignment necessary to an equitable lien. The agreement was alternative, gave no complete and present right in assignment.    There was no purpose to transfer presently accounts to the assignee.    The effect was to give the bankrupt a choice in method of payment.

There was a transfer of the bankrupt's property who

was insolvent at the time.    It was made within four months before the filing of the petition in bankruptcy. It would enable the creditor, defendant coal company, to obtain a greater percentage of debt than other like creditors.    And the said creditor then had reasonable cause to believe that the enforcement of the transfer would effect a preference.    There is voidable preference, and the trustee is entitled to recover.    4 Remington on Bankruptcy (3d Ed.), § 1629.

Decree affirmed, with costs to plaintiff.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, and MCDONALD, JJ., concurred.    BIRD, J., did not sit.