STEVE W. KISER v. H. F. SNYDER, C. EDWIN ALLMAN, W. O. BARRETT, R. DOUGLAS BOYER, DALLAS CHAPPELL, VANN H. JOHNSON, MRS. H. C. LAUERMAN, CLYDE F. McSWAIN, GRADY SWISHER, MARVIN MULHERN, DR. DONALD M. HAYES AND THOMAS D. ROBINSON, TRUSTEES OF FORSYTH TECHNICAL INSTITUTE

No. 7321SC162

(Filed 28 February 1973)

**Negligence § 5; Rules of Civil Procedure § 56— summary judgment — negligence case — material issue of fact**

When all the evidence is considered in the light most favorable to plaintiff, material issues of fact were raised as to whether plaintiff was properly instructed as to the use of a metal shearing machine before being directed to use it; therefore, summary judgment was improperly entered for defendant in plaintiff's action for personal injury sustained when his fingers were caught in the machine while he operated it.

APPEAL by plaintiff from *Gambill, Judge,* 18 September 1972 Session of Superior Court held in FORSYTH County.

Plaintiff instituted this action against the trustees of Forsyth Technical Institute, a community college organized under Chapter 115A of the General Statutes of North Carolina and maintaining liability insurance pursuant to the provisions of G.S. 115A-35. Plaintiff sought to recover damages for personal injuries received on 27 January 1972 while plaintiff was operating a metal shearing machine maintained and supplied

by Forsyth Technical Institute and under the supervision of one of the Institute's classroom instructors.

After the complaint, answer and amended answer were duly filed, defendant moved for summary judgment against the plaintiff and supported its motion by affidavits and the deposition of the plaintiff Kiser. Summarized, the evidence tended to show that on 27 January 1972 the plaintiff was 19 years of age and enrolled as a student at Forsyth Technical Institute in Winston-Salem, North Carolina. Plaintiff, at the time the accident at issue occurred, was in his second semester of a course in acetylene welding, and there were approximately eighteen to twenty-five persons in plaintiff's class. The classroom instructor for both semesters was Joseph William Key.

The deposition of the plaintiff tended to show in pertinent part that at the first class session of the first semester, Mr. Key explained and demonstrated the use of the metal shearing machine to the students in the welding class, including the plaintiff, but that no further instructions concerning the use of the machine were given the plaintiff.

In his deposition plaintiff stated that the color of the guard on the machine was changed from green to a bright orange after his accident and that his accident occurred after he had started into his second semester. However, in his affidavit in opposition to defendants' motion for summary judgment, he stated "that when he returned to class for the second semester in January, the plaintiff did notice that the guard on the machine had been painted orange."

In his deposition plaintiff stated that:

"  *  *  * During my first class session of the first semester, Mr. J. W. Key was my teacher.

As to whether or not I remember on that first evening that Mr. Key explained the use of this particular machine to me and to all of the other students in the class—well, he explained it to us. He just got us in a group and showed us how to mash the pedal to operate it, and he didn't go into no big details about the machine. Yes, sir, he did tell us at that time that the machine could be dangerous if you didn't use it properly. Yes, sir, all of the class was around him at the time.

During the course of that first semester, no, I did not ever hear him explain any further about the machine. Yes, sir, the only time was on that first class session. * * *

* * *

On this evening, as to whether I came up to Mr. Key and told him that I needed a piece of metal cut—I come up to him and I said that we were out of metal, and he told me to go and cut some metal. * * *.

* * *

* * * Yes, sir, I know what the guardrail was there for. It was supposed to be warning you, but, I mean, I don't see any purpose that the thing served at all.

* * *

* * * As to whether I knew also that there was a hold-down plunger right directly behind the guard—no, sir, I didn't know it was directly behind the guard. I knew there were a series of them behind there, but I didn't know where they were located. Say if I stuck my fingers in there, I didn't know if it was a hold-down here, or if it was here, or here (indicating).

* * *

As to whether I knew what the purpose of the hold-down plungers was—not till this accident. * * * Yes, sir, on the night of this accident, I had seen this thing operate several times before and had operated it once myself, and I knew that was the purpose of the hold-down plunger.

* * *

When I was being instructed by Mr. Key on this machine, yes, sir, I do remember him telling me and the entire class there on the first evening of that first session that 'You don't want to get your fingers beyond that guardrail.'

* * *

* * * Yes, sir, I did finish that session. Yes, sir, after my injury I went back and finished. Yes, sir, I did pass my course. * * * "

Also in his deposition plaintiff stated that his instructor never did explain anything further about the machine, either

during the first semester or the second semester, but that once
or twice during the first semester he did use the machine and
that one of the other students had told him on one occasion to
get his fingers away from the machine. However, in his affi-
davit in opposition to defendants' motion for summary judg-
ment, the plaintiff said:

> "That at the beginning of the first semester and again
> at the beginning of the second semester in January of
> 1972, the plaintiff, along with the entire class, was taken
> into a room where a metal shearer was located and in the
> presence of the class, the instructor cut some metal and
> stated to the class very briefly the working of the machine
> and stated that in using machines the students should not
> permit their hands to go under the guardrail; that other
> than these two times with the whole class, the plaintiff
> never received any instruction with regard to the said
> machine nor did he ever receive any warning in regard
> to the machine.

>                   *        *        *

> That the plaintiff had understood in the two short
> periods when he received a brief introduction to the said
> machine that there were holding down pieces at the ends
> of the machine but did not know that the machine had
> holding down pieces which plunged down into the center
> where his hand was injured; that the plaintiff has learned
> since the accident that the holding down pieces plunge
> downward onto the metal very quickly after the mechanism
> is triggered and that there is a series of metal plungers or
> holding down pieces running all the way across immedi-
> ately behind the guardrail and are cylindrical with an
> approximately three-inch diameter."

The deposition of the plaintiff also tended to show that
the metal shearing machine cuts metal with a knife that comes
down and shears the metal; that the metal sheet to be cut is
placed in the machine by laying it flat on a bed and sliding
it underneath a guardrail; that in order to activate the machine,
a foot bar is depressed, at which time plungers, located to the
rear of the guardrail, slip down and clamp the metal sheet in
position; that the cutting edges are located behind the plungers;
that plaintiff was injured when he depressed the foot pedal, or
bar, causing the plungers to come down on two of plaintiff's
fingers. The plaintiff's deposition also tended to show that the

metal shearing machine was constructed so that when plaintiff looked underneath the bed of the machine in order to place his foot on the lever, he could not see the location of his hand and the metal sheet he was holding; and that "his hand accidentally slipped just under the edge of the guard without the plaintiff knowing that his hand had gone under the guard."

After a hearing, the court entered an order that "the motion of the defendants for summary judgment be and the same is hereby allowed." From this order dismissing the plaintiff's action, the plaintiff appealed to the Court of Appeals.

*White & Crumpler by James G. White, Michael J. Lewis and G. Edgar Parker for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by Allan R. Gitter for defendant appellee.*

MALLARD, Chief Judge.

Rendition of summary judgment is, by the rule itself, conditioned upon a showing by the movant (1) that there is no genuine issue as to any material fact and (2) that the moving party is entitled to a judgment as a matter of law. *Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972). " 'The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of fact. . . . His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded.' " *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972).

In *Page v. Sloan, supra,* it is said:

"While our Rule 56, like its federal counterpart, is available in all types of litigation to both plaintiff and defendant, 'we start with the general proposition that issues of negligence . . . are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner.' 6 Moore's Federal Practice (2d ed. 1971) § 56.17[42] at 2583; 3 Barron and Holtzoff, Federal Practice and Procedure (Wright

ed. 1958) § 1232.1, at 106. It is only in exceptional negligence cases that summary judgment is appropriate. *Rogers v. Peabody Coal Co.*, 342 F. 2d 749 (C.A. 6th 1965) ; *Stace v. Watson*, 316 F. 2d 715 (C.A. 5th 1963). This is so because the rule of the prudent man (or other applicable standard of care) must be applied, and ordinarily the jury should apply it under appropriate instructions from the court. Gordon, The New Summary Judgment Rule in North Carolina, 5 Wake Forest Intra. L. Rev. 87 (1969).

Moreover, the movant is held by most courts to a strict standard in all cases; and 'all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion.' 6 Moore's Federal Practice (2d ed. 1971) § 56.15[3], at 2337; *United States v. Diebold, Inc.*, 369 U.S. 654, 8 L.Ed. 2d 176, 82 S.Ct. 993 (1962)."

Nonetheless, summary judgment is proper in negligence actions where it appears that there can be no recovery even if the facts as claimed by plaintiff are true. *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972) ; *Pridgen v. Hughes*, 9 N.C. App. 635, 177 S.E. 2d 425 (1970). When the facts are admitted or established, negligence is a question of law and the court must say whether it does or does not exist. *McNair v. Boyette, supra; Hudson v. Transit Co.*, 250 N.C. 435, 108 S.E. 2d 900 (1959).

The facts in this case are not admitted and neither are they agreed. Portions of the deposition of the plaintiff offered by the defendants in support of their motion are in conflict with other portions of the deposition, as well as portions of plaintiff's affidavit offered by the plaintiff in opposition to the motion. These conflicts, although they appear in plaintiff's statements, when carefully scrutinized and "indulgently regarded" in favor of the plaintiff, raise material issues of fact as to whether plaintiff was properly instructed as to the use of the metal shearing machine before being directed to use it.

Thus, when all the evidence is properly considered and all inferences of fact from the proofs proffered at the hearing are drawn against the movant (defendant) and in favor of the party opposing the motion (plaintiff), genuine issues of fact as to negligence, contributory negligence and damages were raised, and the defendants failed to carry the burden of showing that

there was a lack of any triable issue of fact and that they were therefore entitled to judgment as a matter of law.

The entry of summary judgment was error.

Reversed.

Judges MORRIS and HEDRICK concur.