JAMES W. ENGLISH AND WIFE, SUSAN P. ENGLISH PLAINTIFFS CHARLES G. GEGICK AND WIFE, SHARON F. GEGICK, INTERVENOR-PLAINTIFFS v. HOLDEN BEACH REALTY CORPORATION

### No. 7813SC595

### (Filed 1 May 1979)

1. **Rules of Civil Procedure § 23— class action—fourteen subdivision lot owners—failure to give proper notice**

    In an action by lot owners in a subdivision to have defendant enjoined from constructing a road across their property, the trial court erred in allowing plaintiffs' motion that the action be maintained as a class action, though the court did not abuse its discretion in determining that the class of fourteen lot owners was "numerous" and that it would be difficult, inconvenient, and detrimental to an expeditious resolution of the controversy to join all the owners in this action, since the trial judge failed to provide the members of the class with adequate notice.

2. **Estoppel § 1; Trespass § 7— continuing trespass—building of road—summary judgment improper**

    In an action by lot owners in a subdivision to have defendant enjoined from constructing a road across their property, the trial court erred in granting partial summary judgment for plaintiffs where a genuine issue of material fact was raised by competent, sworn testimony by a surveyor that the roadway in question did not encroach on any lots other than those owned by defendant; furthermore, defendant's allegation that a mistaken course was shown on the map from which plaintiffs' deed was drawn which precluded the true intent of the parties from being realized raised a genuine issue of fact with respect to estoppel by deed.

3. **Injunctions § 3— mandatory injunction—ancillary remedy to action for continuing trespass**

    Plaintiffs could properly request a mandatory injunction as an ancillary remedy to their action for continuing trespass.

APPEAL by defendant from *Herring, Judge*. Orders entered 31 March 1978 *nunc pro tunc* as of 27 February 1978 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 27 March 1979.

On 12 September 1977 plaintiffs filed a complaint "on behalf of themselves and all others similarly situated," as lot owners in a subdivision known as Holden Beach West in Brunswick County, alleging that defendant-developer had trespassed upon their lands by laying out and grading a roadway. Plaintiffs alleged that they had given defendant notice of the wrongful entry and that defendant continued to build the road. Plaintiffs prayed for compensatory and punitive damages and for a permanent and mandatory injunction to stop the building of the road, to remove the road, and to repair any damages.

Defendant filed answer admitting that plaintiffs owned lot number 7 of the subdivision but alleged that the class of lot owners was not so numerous as to require. a class action. Defendant further alleged as a defense that there was an error in the recorded 1963 map of the subdivision; plaintiffs' deed described the property as lot number 7 of the subdivision as shown on the erroneous map. With respect to the map, defendant alleged that: The surveyors in 1977 properly located *on the ground* the right of way of the street as it was intended and drawn on the 1963 map; that the road has been constructed on the ground within the right of way reserved to the defendant on the recorded map; that the 1963 map was drawn without actual survey upon the ground, without the lots or road right of way being staked and without certification by the surveyor that the map was in all respects correct; that the "azimuths or courses shown upon said map were at the time of recording, and now totally incorrect and inaccurate"; that the 1963 map showed the right of way of the street in correct spatial relationship to natural boundaries in that the right of way was to run parallel to the Atlantic Ocean and its frontal dunes, but because of the error in the stated azimuth or course, said road cannot be laid out upon the ground pursuant to that azimuth or course; that defendant did, however, correctly build the road in accordance with the true and correct relation to, and distance from, the natural monument as shown on the 1963 map; that defendant did not discover the error in the 1963 map until 1977 when beginning work on the road. Defendant further alleged

English v. Realty Corp.

that it was the intention of the purchasers of the first 16 lots in the subdivision and the defendant for each purchaser to receive a residential lot fronting on a 60' wide street right of way, extending in an east-west course, parallel to the Atlantic Ocean, and northward from the Atlantic Ocean so that each lot was 175' in depth to a possible high-water line at the ocean front dunes; each conveyance of the first 16 lots was described by reference to the recorded 1963 map; that by reason of the incorrect azimuths and courses (resulting from failure of the surveyor to stake on the ground), the conveyances resulting were not those *mutually intended by the parties*; that plaintiffs were advised of the error when it was discovered in 1977 and requested to join in filing a corrected map, which they refused to do; that in order for the actual intent of the parties to be realized it is necessary to amend the 1963 map in accordance with a 1977 survey. Defendant prayed for the complaint to be dismissed and, alternatively, that the error in the 1963 map be amended to reflect the correct azimuth and course as shown by the 1977 survey. Also (and again, alternatively) defendant prayed that the true and correct boundary between lands of plaintiff and defendant be established.

On 6 February 1978 plaintiffs moved for the court to determine the action to be a proper class action.

On 17 February 1978 plaintiffs filed a motion for summary judgment.

On 27 February 1978 intervenor-plaintiffs, also lot-owners in the subdivision, filed a motion to intervene.

On 27 February 1978 the trial court entered orders (1) allowing the action to be pursued as a class action, (2) allowing the intervention of intervenor-plaintiffs, and (3) granting partial summary judgment to both plaintiffs and intervenor-plaintiffs on the issue of liability as to trespass, retaining the amount of damages for jury determination. In the latter order, the court also ordered a mandatory injunction requiring defendant to remove the road to the location shown on the 1963 map within 120 days.

Plaintiffs submitted three affidavits in support of their motion for summary judgment.

Gerrit C. Greer deposed that he is a registered land surveyor with 19 years experience; that he prepared the 1963 map of the

subdivision; that he located the street in question by transposing and extending the same road from its location in another area of Holden Beach, "to the best of my memory"; that the center line of the road in this subdivision should be the same course and distance as the center line of the road in the other area, "to the best of my memory"; that he did not stake the individual lot corners at the request of defendant and so stated on the map; that he surveyed the subdivision according to defendant's instructions.

Jan K. Dale deposed that he is a registered land surveyor with 8 years experience; that he has examined the 1963 map; that he prepared a survey of plaintiffs' lot in 1977; that he resurveyed the lot for plaintiffs subsequent to 28 April 1977 and found that a marl roadbed designated as Ocean View Boulevard *had been constructed across the northern portion of plaintiffs' property*; that his surveys were done according to the 1963 map.

James W. English, the male plaintiff, deposed that defendant had conveyed lots in the subdivision by reference to the 1963 map; that subsequent to having his property surveyed he noted the construction of the roadway on his property; that defendant refused to comply with his request to remove the roadbed; that defendant continues to trespass on his property.

Defendant submitted four affidavits in opposition to the motion for summary judgment:

Jim D. Griffin, Jr. deposed that he is a licensed building contractor and in July of 1974 hired Dale to survey a lot in Holden Beach; that Dale made a mistake of approximately 20' in the lot boundary line.

Jim D. Griffin, Jr. also deposed in a separate affidavit that the road in this subdivision is not a continuation or extension of the courses of a street in another area of Holden Beach; that this street was laid out and dedicated along a new course running parallel to the sand dunes at the Atlantic Ocean.

Ferd F. Hobbs deposed that he is a registered land surveyor and has been engaged in that practice since 1958; that he surveyed the subdivision "on the ground" in January, 1978; that he has studied the 1963 map and other maps of the area and is satisfied that his 1978 map "is in accordance with" the 1963 map; that the *roadway in question does not encroach on any lots in*

*Holden Beach West which are not owned by defendant*; that Dale resurveyed plaintiffs' lot number 7 *after* the roadway was graded and the stakes placed the second time bore no relationship to the original stakes, being off by as much as nine feet at one point.

Defendant appeals from the orders approving the action as a class action and allowing the motion for partial summary judgment which also ordered the mandatory injunction. Its motion for stay of execution on the mandatory injunction was allowed and defendant posted bond in the amount of $10,000 pending final determination.

*Lovelace, Gill & Snow, by James E. Gill, Jr., for plaintiff appellees.*

*Tuggle, Duggins, Meschan, Thornton & Elrod, by Thomas S. Thornton, for intervenor-plaintiff appellees.*

*Manning, Fulton & Skinner, by Catherine C. McLamb and John B. McMillan, for defendant appellant.*

CARLTON, Judge.

The record discloses that appellant has grouped twenty exceptions under thirteen assignments of error. In its brief, defendant brings forward nine "questions involved." The remaining assignments of error are deemed abandoned. Rule 28, N.C. Rules of Appellate Procedure.

From the arguments in the briefs presented by the parties, we group the questions involved into three issues for discussion:

1. Did the trial court err in allowing the action to be maintained as a class action?

2. Did the trial court err in granting partial summary judgment for the plaintiffs?

3. Did the trial court abuse its discretion in granting a mandatory injunction against the defendant?

We discuss the questions *temporum ordo*:

## 1. CLASS ACTION

We first discuss whether the trial court properly concluded that the action be maintained as a class action pursuant to G.S. 1A-1, Rule 23(a) which provides as follows:

(a) *Representation* — If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued.

Our G.S. 1A-1, Rule 23(a) is closely patterned after Rule 23 of the Federal Rules of Civil Procedure as it existed prior to 1966 (the year of the Federal Rule revision) and our former G.S. 1-70. We rely on decisions interpreting those statutes in interpreting G.S. 1A-1, Rule 23(a). We find the following salient principles applicable to G.S. 1A-1, Rule 23(a):

1. "Although not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a 'class.' Whether a class exists is a question of fact that will be determined on the basis of the circumstances of each case." 7 Wright and Miller, Federal Practice and Procedure: Civil § 1760, p. 579. A "class" for purposes of representation is a group of persons whose interests are so closely similar that an adequate representation of the legal position of one of them will accomplish the same purpose as would be achieved were all of them present and participating in the proceeding. 35A C.J.S., Federal Civil Procedure § 63, p. 116. "Apparently any group of persons having a community of interest in a particular matter constitutes a class and one or more of the group may sue or be sued on behalf of all." Shuford, N.C. Civil Practice and Procedure, Class Actions, § 23-3, p. 199 and cases cited therein.

2. The fact that some members of the class are located outside the court's jurisdiction does not prevent the institution of a class action so long as there are class members within the jurisdiction who adequately represent those outside. *Vann v. Hargett*, 22 N.C. 31 (1838).

3. The class must be so "numerous as to make it impracticable to bring them all before the court." The legal test of "impracticability" of joining all members of a class, thus warranting a

representative or class suit by or against some of the members, is not "impossibility" of joinder, but only difficulty or inconvenience of joining all members of the class. There is no hard and fast formula for determining what is a "numerous" class. The number is not dependent upon any arbitrary limit but rather upon the circumstances of each case. *See* 7 Wright and Miller, Federal Practice and Procedure: Civil § 1762, p. 592 *et seq.;* 35A C.J.S., Federal Civil Procedure, §§ 70, 71, pp. 120, 121; Shuford, *supra,* § 23-3, p. 200; *In re Engelhard,* 231 U.S. 646, 34 S.Ct. 258, 58 L.Ed. 416 (1914).

4. More than one issue of law or fact common to the class should be present in order to maintain a class action. In general, courts focusing on Rule 23 have given it a permissive application so that common questions have been found to exist in a wide range of contexts. 7 Wright and Miller, Federal Practice and Procedure: Civil § 1763, pp. 603-605. *See also Gordon v. Forsyth County Hosp. Authority, Inc.,* 409 F. Supp. 708 (D.C.N.C. 1976).

5. The party or parties representing the class must be such "as will fairly insure the adequate representation of all." This requirement of the statute is also one of due process. *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Those purporting to represent the class must show that they have a personal, and not just a technical or official, interest in the action. *Hughes v. Teaster,* 203 N.C. 651, 166 S.E. 745 (1932). Plaintiff has the burden of showing that the alleged representatives are members of the class and that the interests of absent class members will be adequately protected. 7 Wright and Miller, Federal Practice and Procedure: Civil § 1765, p. 626. It must not appear that there is a conflict of interest between members of the class who are not parties and those members who are representing the class as parties. *Thompson v. Humphrey,* 179 N.C. 44, 101 S.E. 738 (1919). This requirement is not necessarily one of numbers, but is dependent on the adequacy and vigor with which those parties will protect the interests of the class. *Eisen v. Carlisle & Jacquelin,* 391 F. 2d 555 (2nd Cir. 1968); *See Carswell v. Creswell,* 217 N.C. 40, 7 S.E. 2d 58 (1940).

6. "The party who is invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class action procedure have been satisfied." 7 Wright and Miller, Federal

Practice and Procedure: Civil § 1759, p. 578. The pleadings should disclose the number and make-up of the class, the impracticability of bringing them all before the court and the personal interest in the action of the parties representing the class. *See Rossin v. Southern Gas Co.*, 472 F. 2d 707 (10th Cir. 1973); *Hughes v. Teaster, supra.*

7. While Rule 23(a) does not require it, we believe that fundamental fairness and due process dictate that adequate notice, determined in the discretion of the trial court, be given to members of the class. Federal Rule 23(c)(2) now requires notice to members of the class in most instances. The court is required to direct to members of the class "the best notice practicable under the circumstances." This includes individual notice to all members who can be identified through reasonable effort. The notice must be adequate to satisfy constitutional due process requirements. *See* 35A C.J.S., Federal Civil Procedure, § 72, (3d Ed. Supp. 1978) and cases cited therein. As stated in 7A Wright and Miller, Federal Practice and Procedure: Civil § 1788, p. 163: "Thus, notice must be sent long before the merits of the case are adjudicated and, indeed, probably should be sent as soon as possible after the action is commenced; as a practical matter, this means as soon as the court determines that the class action is proper . . . ."

Moreover, the necessity for this kind of notice has been acknowledged in North Carolina. *See* 9 Strong, N.C. Index 3d, Notice, § 1, p. 516. Notwithstanding the silence of a statute, notice of motion is required where a party has a right to resist the relief sought by the motion and principles of natural justice demand that his rights be not affected without an opportunity to be heard. *Hagins v. Redevelopment Comm. of Greensboro*, 275 N.C. 90, 165 S.E. 2d 490 (1969). While our Supreme Court has not been called on to hold that notice to class members is essential to maintenance of a class action, it has pointedly indicated the importance of such a procedural requirement. In *Cocke v. Duke University*, 260 N.C. 1, 131 S.E. 2d 909 (1963) the Court stated:

It is appropriate also, we think, in considering the demurrer to take note of the cautionary steps taken by the court to see that all possible beneficiaries had notice of the pendency of the action. Letters were mailed to all known potential bene-

ficiaries of each class and notice of the institution and purpose of the action was given by publication.

8. Our Rule 23 should receive a liberal construction, and it should not be loaded down with arbitrary and technical restrictions. *See* 35A C.J.S., Federal Civil Procedure, § 64, p. 117. It provides a ready means for dispatch of business. *Cocke v. Duke University, supra.* The rule has as its objectives "the efficient resolution of the claims or liabilities of many individuals in a single action" and "the elimination of repetitious litigation and possible inconsistent adjudications involving common questions, related events, or requests for similar relief." 7 Wright and Miller, Federal Practice and Procedure: Civil § 1754, p. 543.

9. In deciding whether an action may be maintained as a class action, the trial court is accorded a degree of discretion. *In re Engelhard, supra*; 35A C.J.S., Federal Civil Procedure, § 65, p. 118. "A court has broad discretion in deciding whether to allow the maintenance of a class action and therefore also may take account of considerations not expressly dealt with in the rule in reaching a decision . . . ." 7A Wright and Miller, Federal Practice and Procedure: Civil § 1785, p. 134.

Applying these principles to the case *sub judice*, we find it necessary to discuss only the third and seventh principles enumerated above.

[1] The third requirement is that the class must be so "numerous as to make it impracticable to bring them all before the court." In applying the rules with respect to this requirement, as stated above, to the facts disclosed by the record before us, we cannot find that the trial court abused its discretion in determining that this class was "numerous." While it would clearly not be impossible, and perhaps not impracticable, to join the 14 lot owners in this action, the trial court apparently concluded that it would be difficult, inconvenient, and detrimental to an expeditious resolution of the controversy. The location of the road could, and probably would, affect the property lines of all lot owners in the subdivision. A determination of front, back and sidelines for each lot would involve countless lawsuits. Pretrial proceedings could easily drag on for years. It would appear that a determination of the proper location of the roadway, which would obviously affect all lot owners, could most expeditiously be done in one action.

The benefits of such an approach would inure to the defendant as well, since it would not be called on to defend a multiplicity of suits.

We do not find, however, that the trial judge provided adequate notice to members of the class as required by the seventh principle above. On the same day that the trial court granted partial summary judgment and ordered by mandatory injunction that defendant remove the road within 120 days, it also allowed the motion that the action be maintained as a class action and *then* ordered that notice be given to the class members. The most substantial, and in all likelihood, the most important part of the merits of the controversy, *i.e.*, the location of the roadway, had thus been adjudicated before the class members were given notice. Class members were clearly precluded from asserting their rights with respect to the location of the road. The trial court should have ordered that notice be given class members as soon as the court determined that the class action was proper and certainly before a conclusive determination on the merits.

This assignment of error is sustained and the trial court's order that the action be maintained as a class action is reversed.

2. PARTIAL SUMMARY JUDGMENT

We next turn to the question of whether the trial court properly allowed partial summary judgment for the plaintiffs. Ordinarily, the allowance of a motion for summary judgment on the issue of liability, reserving for trial the issue of damages, will not be appealable. *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 251 S.E. 2d 443 (1979). Here, however, the mandatory injunction ordering defendant to remove the roadway, as part of the order for partial summary judgment, clearly affected a "substantial right" of the defendant. G.S. 1-277; G.S. 7A-27.

G.S. 1A-1, Rule 56(c) provides in part as follows:

The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

By the clear language of the rule itself, the motion for summary judgment can be granted only upon a showing by the movant (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. *Kiser v. Snyder*, 17 N.C. App. 445, 194 S.E. 2d 638 (1973). Upon motion for summary judgment the burden is on the moving party to establish the lack of a triable issue of fact. 11 Strong, N.C. Index 3d, Rules of Civil Procedure, § 56.2, p. 354. Where a moving party supports his motion for summary judgment by appropriate means, which are uncontroverted, the trial judge is fully justified in granting relief thereon. However, it is further clear that summary judgment should be granted with caution and only where the movant has established the nonexistence of any genuine issue of fact. That showing must be made in the light most favorable to the party opposing the summary judgment and that party should be accorded all favorable inferences that may be deduced from the showing. The reason for this is that a party should not be deprived of an adequate opportunity fully to develop his case by witnesses in a trial where the issues involved make such procedure the appropriate one. *Rogers v. Peabody Coal Co.*, 342 F. 2d 749 (6th Cir. 1965). The papers of the moving party are carefully scrutinized and those of the opposing party are, on the whole, indulgently regarded. *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972).

[2]   We are unable to agree with the trial court that there is no genuine issue as to any material fact arising from the pleadings and the affidavits submitted by the parties.

The plaintiffs alleged, and defendant denied, that defendant was trespassing on plaintiffs' property. The affidavit of Ferd F. Hobbs, a registered land surveyor, presented by defendant raises a clear issue of material fact. It is in direct conflict with the affidavit of Jan Dale, submitted by plaintiffs. Hobbs deposed that the roadway in question did not encroach on any lots other than those owned by defendant. His conclusion was based upon a survey done by him and an examination of the 1963 map and other maps of the area. In this action based on alleged trespass, we can think of no more pointed way to raise a genuine issue as to a material fact than to have competent, sworn testimony that there has been no trespass.

Plaintiffs argue that the doctrine of estoppel by deed prevents the defendant from denying or asserting any boundaries other than those shown on the 1963 map from which the description in the deed was drawn. Hence, summary judgment was proper because there was no issue of material fact with respect to boundaries. We do not agree.

It is generally held that a recital inserted in a deed through mistake will not be permitted to operate as an estoppel so as to exclude the truth. 31 C.J.S., Estoppel, § 43, p. 348. Here, defendant alleged a mistaken course was shown on the 1963 map from which plaintiffs' deed was drawn, precluding the true intent of the parties from being realized.

Moreover, it is an established rule of law that estoppel, or the existence thereof, is generally a question of fact for determination by the jury. 31 C.J.S., Estoppel, § 163, p. 784. The rule has been approved in North Carolina. *Stereo Center v. Hodson*, 39 N.C. App. 591, 251 S.E. 2d 673 (1979); *Peek v. Wachovia Bank & Trust Co.*, 242 N.C. 1, 86 S.E. 2d 745 (1955).

Defendant's brief presents numerous other reasons to support its argument that the granting of partial summary judgment was improper. Since we hold that the granting of the motion was erroneous for the reasons stated above, it is unnecessary for us to discuss these remaining arguments. The order of the trial court granting partial summary judgment for plaintiffs is reversed. This holding also disposes of defendant's second assignment of error; that portion of the order granting partial summary judgment to the *intervenor*-plaintiffs is also reversed.

### 3. MANDATORY INJUNCTION

[3] We next turn to the defendant's contention that the trial court improperly ordered a mandatory injunction requiring defendant to remove the roadway and replace it according to the 1963 map. We do not agree with defendant that a mandatory injunction is improper in actions such as this, but for reasons stated *infra*, we must vacate this portion of the trial court's order and remand for further proceedings.

We note the following well-established principles with respect to an action of this nature:

1. Equitable relief in the form of a mandatory injunction will lie in cases of continuing trespass in order to avoid a multiplicity of actions at law for damages. *Conrad v. Jones*, 31 N.C. App. 75, 228 S.E. 2d 618 (1976); *Collins v. Freeland*, 12 N.C. App. 560, 183 S.E. 2d 831 (1971); *Young v. Pittman*, 224 N.C. 175, 29 S.E. 2d 551 (1944); 7 Strong, N.C. Index 3d, Injunctions, § 7.1, p. 240.

2. Injunction is a proper remedy for relief against continuing trespass either where perpetual injunction is sought in an independent action or where (as here) the injunction is ancillary to an action in which the title to land or the right to its possession is at issue. *Jackson v. Jernigan*, 216 N.C. 401, 5 S.E. 2d 143 (1939).

3. "Injunctive relief is not a matter of right, but its grant or refusal usually rests in the sound discretion of the court, exercised in harmony with well established principles." 43 C.J.S., Injunctions, § 14, p. 768. Where the granting of relief in an action is dependent on the sound discretion of the court, summary judgment should be cautiously entered. *Booth v. Barber Transp. Co.*, 256 F. 2d 927 (8th Cir. 1958). "Accordingly, while it may be proper to grant a summary judgment in an action for injunction, the court should proceed cautiously before applying summary judgment procedure where injunctive relief is sought." 35B C.J.S., Federal Civil Procedure, § 1139, p. 534.

4. In all actions tried without a jury it is the duty of the trial judge to find the facts specially, state separately its conclusions of law, and enter the appropriate judgment. G.S. 1A-1, Rule 52(a)(1). It is also the duty of the trial judge to make findings of fact determinative of the issues raised by the pleadings and the evidence. *McCormick v. Proctor*, 217 N.C. 23, 6 S.E. 2d 870 (1940); *Dunn v. Wilson*, 210 N.C. 493, 187 S.E. 802 (1936).

Applying the foregoing principles to the facts before us, we find that plaintiffs properly requested the court for a mandatory injunction as an ancillary remedy to its action for continuing trespass. We also find nothing improper in plaintiffs' motion for summary judgment in an action of this nature. The trial court may properly consider such a motion in an injunction action provided it diligently applies caution as noted in the third principle above. Here, however, the mandatory injunction was ordered as a part of the order granting partial summary judgment on the issue of trespass. Since we have earlier held that the motion for partial

summary judgment was improvidently allowed, the order for a mandatory injunction is left unsupported by any findings of fact or conclusions of law.

We are mindful that, ordinarily, findings of fact are not necessary to resolve the question of whether there exists a genuine issue as to a material fact and that the trial court is not required to make findings in allowing a motion for summary judgment. 11 Strong, N.C. Index 3d, Rules of Civil Procedure, § 56.5, p. 360. Here, however, in light of our reversal of the order for partial summary judgment, findings of fact and conclusions of law would be necessary for a mandatory injunction to stand, in accordance with the fourth principle above. Clearly, plaintiffs will not be entitled to the injunction until questions of boundary, title and possession have been resolved. There are no findings or conclusions to resolve these questions as a consequence of our reversal of the order for partial summary judgment.

For the reasons stated, that portion of the court's order directing a mandatory injunction is vacated and remanded to the trial court for further proceedings consistent with this portion of our opinion.

It is unnecessary for us to decide whether plaintiffs would have been entitled to summary judgment had the mandatory injunction been pursued as a remedy independent of the action for continuing trespass. We have noted cautions in this respect above and observe that summary judgment is a drastic remedy, and there must be a cautious observance of its requirements in order that no person might be deprived of a trial on a genuinely disputed factual issue. 11 Strong, N.C. Index 3d, Rules of Civil Procedure, § 56, p. 350.

## RESULT

Reviewing our decision contextually, we find the following result: The order of the trial court allowing the action to be maintained as a class action is reversed. Since the basis for our holding is lack of notice to members of the class, we see no reason why plaintiffs cannot renew this motion on remand if they so desire. Should the trial court rule in their favor, notice should be given as noted above. Otherwise, the plaintiffs may proceed as hereinafter noted. No appeal was taken from the trial court's order to allow the intervenor-plaintiffs to join the action. They

are therefore joined with the plaintiffs for any subsequent proceedings.

We also note that we are unable to determine from the record whether the class members were actually given notice of the court's rulings as ordered. If so, they should be given notice of this Court's decision and the proper status of the action on remand. The burden for such notice is on the plaintiffs.

That portion of the trial court's order granting partial summary judgment for plaintiffs and intervenor-plaintiffs is reversed.

That portion of the trial court's order providing for a mandatory injunction requiring defendant to remove and relocate the road is vacated and remanded for proceedings consistent with section three of this opinion.

Reversed in part.

Vacated and remanded in part.

Judges PARKER and HEDRICK concur.