Smith v. Watson

NEIL EVANS SMITH AND WIFE, ALICE M. SMITH v. JACK A. WATSON AND
WIFE, PHYLLIS B. WATSON

No. 8413DC170

(Filed 20 November 1984)

1. **Appeal and Error § 6.2— order granting summary judgment on liability but reserving damages for trial—not appealable—heard in discretion of the court**

    Although an order granting summary judgment on the issue of liability and reserving the issue of damages for trial is not immediately appealable, the Court of Appeals in its discretion considered such an appeal when the order included a permanent injunction.

2. **Tenants in Common § 3; Deeds § 19.3— assignment of pier rights—exclusive right in one tenant in common—restrictive covenant**

    Where the developer of property sold a lot to defendants, transferred an undivided one-half interest in a beach area to defendants, then executed an Assignment of Pier Rights which transferred the developer's pier rights to defendants, subject to the right of the purchaser of an adjoining lot to use any pier constructed with the right to build a boat stall reserved to defendants, and the developer subsequently sold the adjoining lot to plaintiffs, the Assignment of Pier Rights can either be considered an agreement between tenants in common giving one tenant in common the right to exclusive use of part of the property, or a covenant running with the land.

3. **Registration § 1— assignment of pier rights—not effective without registration**

    An Assignment of Pier Rights which was either an agreement concerning exclusive use by tenants in common or a covenant restricting the use of a boat stall was not binding on subsequent purchasers for value because of defendants' failure to record the instrument prior to plaintiffs' acquisition of the land. N.C.G.S. 47-18.

4. **Registration § 3— assignment of pier rights—actual notice immaterial if not recorded**

    Where defendants failed to record an Assignment of Pier Rights prior to plaintiffs' acquisition of the land, actual notice to plaintiffs will not defeat the requirement that property interests be recorded to be binding on subsequent purchasers.

5. **Rules of Civil Procedure § 31— motion to amend answer denied—no abuse of discretion**

    The trial court did not abuse its discretion by not permitting defendants to amend their answer to assert the three year statute of limitations for personal property claims because the action, involving an Assignment of Pier Rights, was not an action to recover personal property.

---

Smith v. Watson

---

APPEAL by defendants from *Gore, Judge*. Judgment entered 23 September 1983 in District Court, BLADEN County. Heard in the Court of Appeals 13 November 1984.

This is a civil action wherein plaintiffs, husband and wife, seek to have defendants, husband and wife, ejected from exclusive use of a boat stall which is part of a pier owned by plaintiffs and defendants as tenants in common. Plaintiffs also ask that defendants be permanently enjoined from usurping plaintiffs' rights in the boat stall, that they be awarded damages in the amount of $4,000, and that a certain document entitled "Assignment of Pier Rights" be declared null and void. In their complaint, filed 5 April 1982, plaintiffs made allegations that, except where quoted, are summarized as follows:

On 23 February 1978 plaintiffs purchased from J. Michael Starling and Linda P. Starling a one-half undivided interest in a parcel of land that abuts the high water mark of White Lake. Defendants had acquired a one-half undivided interest in the same property from the Starlings on 9 December 1977. Both deeds were recorded. Following acquisition of the property, plaintiff Neil Smith and defendant Jack Watson applied to "the appropriate agency of the State" for a permit to build a pier extending from the parcel of land owned by the parties "into and over . . . White Lake." Mr. Smith and Mr. Watson obtained the permit in April, 1978, and thereafter "in cooperation with each other, planned and constructed a wooden pier as allowed and authorized by the State." Plaintiffs further alleged

> that as a part of said pier a boat stall was constructed; that all of the expenses in connection with this project were shared equally by the plaintiffs and defendants; however, the defendant Jack A. Watson installed at his sole expense a boat wench in the boat stall portion of the pier, but the plaintiff Neil E. Smith has repeatedly offered to pay one-half of the cost of same; that since the construction and completion of this improvement and fixture to the real property above-described, the defendants, Jack A. Watson and wife Phyllis B. Watson, have claimed exclusive rights to the boat stall portion of the pier and have failed and refused to allow the plaintiffs to use and enjoy same together with the defendants.

Plaintiffs further alleged that a document entitled "Assignment of Pier Rights," executed by defendants and Mr. and Mrs. Starling on 9 December 1977 and recorded on 25 August 1978, did not give defendants "superior and exclusive rights to the boat stall portion of the pier." Plaintiffs asserted that they were unaware of the execution of this document at the time they purchased their property, and alleged that they

> were never informed by their Grantors or anyone else, prior to purchasing an interest in said real property, that the defendants might assert rights to a portion of the real property . . . or subsequent improvements thereon to the exclusion of the plaintiffs. . . .

Plaintiffs contended that defendants' refusal to allow plaintiffs use of the boat stall "constitutes a constructive ouster of the plaintiffs . . . for over three and one-half years," damaging them in the amount of $4,000.00.

Defendants answered, admitting plaintiffs' allegations relating to sale of the land by the Starlings to plaintiffs and defendants and the subsequent recording of the deeds. Defendants denied the remaining material allegations contained in plaintiffs' complaint.

On 22 June 1983 plaintiffs filed a motion for partial summary judgment, asserting that "movant is entitled to a judgment against each defendant as a matter of law on all issues except damages." On 11 July defendants filed a motion for leave to amend their answer to assert the affirmative defense of estoppel; on 28 July defendants filed a second motion for leave to amend their answer to assert a second affirmative defense, that being the statute of limitations. On 23 September 1983 Judge Gore granted plaintiffs' motion for partial summary judgment, ordering that

> defendants are hereby permanently restrained and enjoined from denying the plaintiffs the use and enjoyment of the boat stall owned by the parties hereto as tenants in common, that that certain document entitled "Assignment of Pier Rights," dated December 9, 1977 . . . is hereby declared null and void as a matter of law, and that this action shall be tried by a jury on the issue of damages only.

Judge Gore also denied defendants' motion to amend their answer, holding that the proposed defenses are without basis "in fact or law." Defendants appealed.

*Pope, Tilghman & Tart, by Johnson Tilghman, for plaintiffs, appellees.*

*H. Mac. Tyson II, P.A., by H. Mac. Tyson II, for defendants, appellants.*

HEDRICK, Judge.

[1]  Ordinarily, an order granting summary judgment on the issue of liability and reserving for trial the issue of damages is not immediately appealable. *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 251 S.E. 2d 443 (1979). In *English v. Realty Corp.*, 41 N.C. App. 1, 254 S.E. 2d 223, *disc. rev. denied*, 297 N.C. 609, 257 S.E. 2d 217 (1979), however, where partial summary judgment included a mandatory injunction directing the defendant to remove a roadway, this Court said that the order affected a substantial right of the defendant and was thus immediately appealable pursuant to N.C. Gen. Stat. Secs. 1-277 and 7A-27. While we recognize a significant difference between the mandatory injunction entered in *English* and that entered in the present case, we consider the appeal on its merits in the exercise of our discretion.

[2]  Defendants' contention that "[t]he trial court committed reversible error by the signing and entry . . . of [the 23 September] order" is bottomed on their assertions that the document dated 9 December 1977 and termed "Assignment of Pier Rights" "gave defendants exclusive rights to the subject matter pier's sole and singular boat stall," and that the terms of this document were binding on plaintiffs, purchasers, as well as on the Starlings, grantors. Resolution of the question of this document's validity is thus essential to a resolution of the issues raised on appeal. The following facts are undisputed:

Michael Starling purchased land abutting the high water mark of White Lake in Bladen County for the purpose of developing the property as a subdivision. Starling divided the property into four lots, on which he constructed houses. Under the plan developed by Starling the owner of Lot 1 and the owner of Lot 3 would each hold a one-half undivided interest in a parcel of beach-

front land, and the owners of Lots 2 and 4 would also hold a parcel of beachfront land as tenants in common. Because of regulations promulgated by the Department of Natural Resources and Community Development pursuant to N.C. Gen. Stat. Sec. 113-35, the number of piers that could be constructed on the beachfront land was limited to two. Starling determined that the eventual owners of Lots 1 and 3 would share a pier, to be constructed on the beachfront property held by the two as tenants in common. The other pier would be shared by the owners of Lots 2 and 4.

On 9 December 1977 Starling conveyed Lot 1 to defendants by warranty deed, and the deed was recorded that same day. Also on 9 December 1977, in exchange for $2,000 paid by defendants to the Starlings, Mr. and Mrs. Starling and defendants entered into an "Assignment of Pier Rights," which contained the following pertinent provisions:

WHEREAS, Watson has entered into an agreement to purchase one of the lots described in the hereinabove referred to deed; said lot being designated as Lot One, of four building lots described on said deed, said lot being approximately seventy (70) feet by seventy-two (72) feet; and,

WHEREAS, as a part of and in consideration of the purchase of said lot and dwelling erected thereupon, Watson is to acquire a one-half undivided interest in and to one-half of the beach area fronting on the body of water known as White Lake; and,

WHEREAS, specifically in consideration of and in connection with the purchase of said lot, improvement, and beach area, Watson is to be vested with certain rights to construct and enjoy a pier upon the hereinabove described and referred to beach area to be transferred and conveyed unto Watson.

NOW, THEREFORE, in consideration of the mutual covenants of the parties hereto, the purchase of the hereinabove referred to parcels of real property and dwelling erected thereupon by Watson from Starling, it is agreed as follows:

I. That Starling transfers, assigns and conveys all of his right, title and interest in and to the pier rights assigned to

the beach area described in the deed executed and delivered this day by Starling to Watson.

II. It is specifically understood and agreed by and between the parties hereto that Watson shall be vested with the right to locate and erect a pier on and from said beach area pursuant to and in accord with any and all applicable regulations or laws of the State of North Carolina or any agency of the State of North Carolina.

III. That the right to use and enjoy the pier and any sundeck facility constructed shall be vested in and to Watson subject to the right of any subsequent purchaser of Lot Number Three of the hereinabove referred to and described lots owned by Starling (as described in deed recorded in Book 224, at page 573, of the Bladen County Registry) to jointly use and enjoy said pier and sundeck area. The cost of locating, erecting and maintaining said pier and sundeck area shall be jointly shared by Watson and the subsequent purchaser and owner of Lot Number Three or as mutually agreed by and between said lot owners.

IV. It is specifically understood and agreed by and between the parties hereto that Watson has bargained for and is hereby assigned and vested with the right to erect, maintain, possess, and enjoy a boatstall upon said pier facility as allowed by the applicable laws and regulations of the State of North Carolina or any agency of the State of North Carolina. In the event that Watson shall elect not to locate, erect, or use a boatstall on said pier facility, said boatstall rights and privileges shall become available to the subsequent purchaser and owner of Lot Number Three as hereinabove referred to and described.

V. This Agreement shall be binding upon the heirs, successors and assigns of the parties hereto.

On 23 February 1978 the Starlings conveyed Lot 3 to plaintiffs by general warranty deed recorded 24 February 1978. The deed made no reference to the document entitled "Assignment of Pier Rights." Sometime after February 1978, plaintiff Neil Smith and defendant Jack Watson obtained a permit to construct a pier on the property held by the parties as tenants in common. In the

summer of 1978 the parties began to use the newly-constructed pier, and defendants asserted their alleged right to exclusive use of the boatstall. On 25 August 1978 defendants recorded the "Assignment of Pier Rights" dated 9 December 1977.

Citing the well-established rule that an assignee "acquires only such right, title and interest as the assignor had," appellees strongly contend that the Starlings "could not assign to defendants-appellants superior rights to the boatstall because they could not grant or give away something which they did not possess." We do not agree that the Starlings had no interest to convey to defendants; indeed, we believe the interest conveyed may be conceptualized in either of two ways:

First, we note that the effect of the transfer from the Starlings to defendants on 9 December 1977 of a one-half undivided interest in the beachfront property was to create a tenancy in common, shared by defendants and the Starlings. An agreement between tenants in common giving one tenant in common the right to exclusive use or possession of all or part of the property so held "is valid and enforceable, and binding on them, their heirs, personal representatives, and assigns with notice." *Stanley v. Cox*, 253 N.C. 620, 634, 117 S.E. 2d 826, 836 (1961). Appellees recognize this rule, but attempt to escape its application by characterizing Starling as a "third party." The characterization is inaccurate, however, because it ignores the fact that from 9 December 1977, when the Starlings executed the deed to defendants, to 23 February 1978, when the Starlings conveyed their remaining interest to plaintiffs, the Starlings and defendants held the beachfront property as tenants in common.

Although raised by neither party, we believe the agreement entitled "Assignment of Pier Rights" also may be viewed as an attempt to create a covenant running with the land. The law concerning covenants running with the land is set out in some detail in *Raintree Corp. v. Rowe*, 38 N.C. App. 664, 248 S.E. 2d 904 (1978):

A covenant is either real or personal. Covenants that run with the land are real as distinguished from personal covenants that do not run with the land. . . . Three essential requirements must concur to create a real covenant: (1) the intent of the parties as can be determined from the in-

struments of record; (2) the covenant must be so closely connected with the real property that it touches and concerns the land; and, (3) there must be privity of estate between the parties to the covenant.

*Id.* at 669, 248 S.E. 2d at 907-08. Our examination of the record reveals evidence tending to show that the Starlings attempted to convey to defendants a covenant running with the land, benefiting Lot 1, owned by defendants, and burdening the undivided interest held by the Starlings, and later by plaintiffs, in the beachfront property from which the pier was constructed.

[3] Whether the interest conveyed by the Starlings to defendants be viewed as an agreement concerning exclusive use by tenants in common or as a covenant restricting the use of the boat stall by the owners of Lot 3, we think it clear that the agreement is not binding on plaintiffs as subsequent purchasers for value because of defendants' failure to record the instrument prior to plaintiffs' acquisition of their land. N.C. Gen. Stat. Sec. 47-18.

In *Walker v. Phelps*, 202 N.C. 344, 162 S.E. 727 (1932), our Supreme Court was confronted with facts analogous to those of the instant case. In *Walker*, the grantor Land Bank owned land lying on both sides of a drainage canal. The Land Bank contracted to sell the land on one side of the canal to defendant Phelps; this contract contained certain provisions relating to the maintenance and use of the canal, and was not recorded. Several months later the bank sold the remaining parcel of land to plaintiffs by deed containing similar provisions concerning the canal, which provisions benefited plaintiffs' land. This deed was recorded. Our Supreme Court held that the provisions of the unregistered contract between grantor and defendant were ineffective to bind the rights of plaintiffs. We find *Walker* persuasive authority in the instant case, and hold that the agreement, executed by the Starlings and defendants and not recorded until long after plaintiffs purchased their land, is not binding on plaintiffs as subsequent purchasers for value.

[4] Defendants attempt to escape application of the rule requiring that property interests be recorded in order to be binding on subsequent purchasers by pointing to evidence tending to show that plaintiffs had actual notice of defendants' interest in the boat stall. It is on this contention that defendants base their argu-

ment concerning equitable estoppel. Our courts have been confronted with similar arguments many times, and have consistently found them to be unpersuasive:

> The wisdom embodied in the Connor Act has clearly demonstrated itself in the certainty and security of titles in this State, which the public has enjoyed since the first day of January, 1886, when this act went into effect.
>
> It is necessary in the progress of society, under modern conditions, that there be *one place* where purchasers may look and find the status of titles to land. Therefore, our courts have held many times since this act went into effect that "no notice, however full and formal, will supply the place of registration."

*Davis v. Robinson*, 189 N.C. 589, 601, 127 S.E. 697, 704 (1925) (citations omitted) (emphasis original). *See also Sexton v. Elizabeth City*, 169 N.C. 385, 86 S.E. 344 (1915).

[5] Defendants finally assign error to the court's refusal to permit amendment of their answer to assert as a defense the statute of limitations. Defendants cite a number of cases in support of their contention that "the applicable three (3) year statute of limitations for personal property expired prior to the filing of Plaintiffs Appellees' Complaint." As the above discussion makes clear, we do not agree that plaintiffs' action is properly characterized as an action to recover personal property. We do not believe the trial court abused its discretion in denying defendants' request for leave to amend.

The judgment appealed from is

Affirmed.

Judges WEBB and HILL concur.